```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

Kelly Smith

    v.                                        Civil No. 15-cv-48-JD
                                                Opinion No. 2015 DNH 193

Carolyn Colvin, Acting Commissioner,
Social Security Administration


O R D E R


Kelly Smith seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for social security disability insurance benefits. In support, Smith argues that the Administrative Law Judge ("ALJ") made legal and factual errors, which require the decision to be reversed and remanded. The Acting Commissioner moves to affirm.


Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial

evidence. § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Background

Smith applied for social security disability insurance benefits in February of 2012, alleging disability since February 1, 2011, due to back and neck pain, cognitive disorder, depression, post-traumatic stress disorder, and personality disorder.  Smith has a high school education and past work experience as a housekeeper and licensed nursing assistant.  She was forty years old when she applied for benefits.  Her last insured date was June 30, 2012.

The medical records, as summarized in the parties' joint statement of material facts, show that Smith first complained of back pain in December of 2011.  She continued to be examined for back pain issues through 2012.  Dr. Sohaib Siddiqui became Smith's primary care physician in July of 2012.

Cheryl Bildner, Ph.D., did a consultative psychological evaluation of Smith on July 30, 2012.  Dr. Bildner noted inconsistencies between Smith's reports and her medical history, which included drug-seeking behavior.  Based on her examination,

Dr. Bildner found that Smith could interact appropriately and communicate effectively; she had no deficits in social interaction; she could remember work locations and understand work procedures; she had no gross deficits in memory; she lacked motivation to maintain a schedule and to sustain employment; she was unable to maintain attention and complete tasks due to ineffective pain management and lack of motivation; and she was unable to tolerate common workplace stress.  Dr. Bildner diagnosed obsessive compulsive disorder, post-traumatic stress disorder, dysthymic disorder, chronic back pain, and status post removal of a colloid cyst.  She noted that substance abuse would have to be ruled out and recommended counseling and substance abuse evaluation.

In July of 2012, a state agency physician, Dr. Hugh Fairley, reviewed Smith's records to complete a physical residual functional capacity assessment for the period from February 1, 2011, to June 30, 2012.[1]  Dr. Fairly concluded that Smith had the physical residual functional capacity to do work corresponding to the light exertional level with some postural limitations.

---

[1] The parties did not include Dr. Fairley's opinion in the Joint Statement of Material Facts, although it is part of the administrative record and the ALJ relied on the opinion in his decision.  LR 9.1.

In August of 2012, a state agency psychologist, Dr. Edward Martin, reviewed Smith's records to assess her mental impairments.  Dr. Martin considered the period between April 1, 2012, and June 30, 2012, and found that Smith had anxiety and affective disorders that were not severe.  He concluded that the disorders did not meet the criteria of listed impairments and that Smith was able to care for herself; interact effectively with others; maintain concentration, persistence, and pace; and tolerate normal workplace stress.[2]

In September of 2012, Linda Anderson of Northern Human Services conducted a diagnostic interview with Smith.  Anderson found that Smith had a withdrawn and fearful demeanor and a depressed mood but had appropriate eye contact, clear speech, normal perception, logical thought process, cooperative behavior, and average intelligence.  Smith attended therapy with Anderson after the initial interview.

Smith began treatment with Dr. Erinn Felner, a psychiatrist, in December of 2012.  Dr. Felner assessed post-traumatic stress disorder, bipolar affective disorder, and

---

[2] The parties also did not include Dr. Martin's opinion in the Joint Statement of Material Facts, although it is part of the administrative record and the ALJ relied on the opinion in his decision.  LR 9.1.

chronic pain.  She prescribed Seroquel and noted at subsequent appointments that Smith's symptoms and mood had improved.

Dr. Siddiqui completed a medical Source Statement of Ability to Do Work-Related Activities (Physical) in July of 2013.  He found that Smith was able to lift and carry less than ten pounds, could not walk or stand for two hours in an eight-hour day, could sit for fewer than six hours, was limited in her ability to reach, and had limitations in her ability to do postural activities.  Dr. Siddiqui also indicated that Smith's ability to maintain attention and concentration would be significantly compromised by her pain medication.  He did not identify any clinical or medical findings to support the limitations he assessed on the form.

Dr. Hess and Dr. Felner each completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) in July of 2013.  They both found that Smith was markedly limited or effectively precluded from understanding, remembering, and carrying out detailed instructions; from maintaining attention and concentration to do work tasks; from maintaining and performing within a schedule and with regular attendance; and from doing other activities.

A hearing before an ALJ was held on August 15, 2013.  Smith testified at the hearing that she could not work because of back

5

and neck pain and that medication has made a positive difference in her mental condition. The ALJ issued a decision on September 6, 2013, finding that Smith was able to do work at the light exertional level which was limited to uncomplicated tasks. The ALJ found that she was not able to do her past work but that a finding of not disabled was appropriate under Medical-Vocational Rule 202.21. The Appeals Council found no reason to review the ALJ's decision, making that decision the final decision of the Acting Commissioner.

## Discussion

Smith contends that the ALJ failed to adequately assess her limitations under Listings 12.05C and 12.02, improperly weighed the medical opinion evidence, erred in assessing her residual functional capacity; and improperly relied on the Medical Vocational Guidelines to find her not disabled. Based on those alleged failures, Smith argues that the ALJ's findings are not supported by substantial evidence. The Acting Commissioner moves to affirm. Because the ALJ's residual functional capacity assessment is not supported by substantial evidence, the case must be reversed and remanded for further proceedings.

A residual functional capacity assessment determines the most a person can do in a work setting despite her limitations caused by impairments. 20 C.F.R. § 404.1545(a)(1). The Acting

Commissioner's residual functional capacity assessment will be affirmed if it is supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012). Because an ALJ is a lay person, however, she is "not qualified to interpret raw medical data in functional terms" for the purpose of making a residual functional capacity assessment. Nguyen, 172 F.3d at 35; Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996).

At Step Two of the sequential analysis, the ALJ found that Smith had the following severe impairments: cognitive disorder, personality disorder, post-traumatic stress disorder, major depressive disorder, status post colloid cyst reduction, disc protrusion, and cervical stenosis. Despite those impairments, the ALJ concluded that Smith retained the functional capacity to do work at the light exertional level, § 404.1567(b), although she was limited to occasionally doing postural activities, was unable to climb, and was limited to uncomplicated tasks with regular breaks.

In making the residual functional capacity assessment, the ALJ noted that Smith's treating source's opinions were contradicted by their findings expressed in the treatment notes.

For that reason, the ALJ decided not to give weight to those opinions. Instead, the ALJ relied on the physical assessment done by Dr. Fairly and the mental assessment done by Dr. Martin.[3]

In his opinion, Dr. Martin acknowledged Smith's diagnoses of anxiety disorders and affective disorders. He found that the anxiety and affective disorders were not severe because Smith was able "to interact effectively with others, to maintain concentration/persistence/pace, and to otherwise tolerate the stresses common to work or work-like situations." As a result, Dr. Martin did not find that Smith was functionally limited by her mental disorders.

Smith argues that the lack of a supporting opinion means that the ALJ's residual functional capacity assessment is not supported by substantial evidence. The Acting Commissioner contends that the ALJ properly relied on Dr. Martin's opinion as to the functional effects of mental impairments and also made a

---

[3] Smith argues that Dr. Martin's opinion cannot support the ALJ's assessment because Dr. Martin did not review Dr. Hess's evaluation and opinions, which were done in July and August of 2013. Because Smith's last insured date was June 30, 2012, the only relevant opinions and treatment records are those completed before that date or retrospective opinions about her impairments prior to the relevant date. Smith has not shown or even suggested that Dr. Hess provided a retrospective opinion about her mental impairments prior to June 30, 2012. See Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982).

common-sense evaluation of the record to support the residual functional capacity assessment.[4]

The exception for a common-sense finding without a supporting expert opinion, however, applies only when the medical findings in the record show relatively little impairment.  Manso-Pizarro, 76 F.3d at 17.  An expert opinion is necessary "unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." Id. (internal quotation marks omitted).  While an ALJ may assess functional capacity based on the findings of more than one medical source, the assessment still must be based on some medical findings and opinions.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987); Perry v. Astrue, 2014 WL 4965910, at *6 (D. Mass. Sept. 30, 2014); Frotten v. Colvin, 2014 WL 4659309, at *4 (D.N.H. Sept. 17, 2014).

Dr. Martin, however, did not find personality disorder or cognitive disorder and did not find that a limitation to uncomplicated tasks would compensate for those disorders.  The other opinions in the record found that Smith was markedly limited by her mental impairments.  No opinion in the record

---

[4] As noted above, the Acting Commissioner failed to include the opinions of Dr. Martin and Dr. Fairley in the Joint Statement of Material Facts.

limited Smith to uncomplicated tasks to compensate for her mental limitations.

Given the severe mental impairments found by the ALJ and the lack of any expert opinion that a limitation to uncomplicated tasks would adequately address those impairments, expert opinion about the functional loss was needed here. The ALJ's residual functional capacity assessment is not supported by substantial evidence. See, e.g., Jabre v. Astrue, 2012 WL 1216260, at *9 (D.N.H. Apr. 5, 2012); Sanabria v. Astrue, 2008 WL 2704819, at *5-*6 (D. Mass. July 9, 2008).

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 9) is granted. The Acting Commissioner's motion to affirm (document no. 11) is denied.

The case is remanded to the Social Security Administration under sentence four of § 402(g). The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

*/s/ Joseph A. DiClerico, Jr.*
Joseph DiClerico, Jr.
United States District Judge

October 5, 2015

cc:  Karen B. Fitzmaurice, Esq.
     Robert J. Rabuck, Esq.